**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DANIEL R. A. J.,

    Plaintiff,

v.                                                                 Civ. No. 25-919 KG/GBW

FRANK BISIGNANO,
*Commissioner of the Social
Security Administration*,

    Defendant.

**<u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>**

This matter comes before me pursuant to the Court's Order of Reference (*doc. 24*)

and Plaintiff's Motion to Remand the Social Security Agency ("SSA") decision to deny

Plaintiff Childhood Disability Benefits ("CDB") and Supplemental Security Income

("SSI").  *Doc. 12*.  For the reasons explained below, I recommend DENYING Plaintiff's

Motion and AFFIRMING the judgment of the SSA.

**I.      PROCEDURAL HISTORY**

Plaintiff filed applications for SSI and CDB on August 16, 2022, and November 3,

2022, respectively, alleging disability beginning April 1, 2020.   Administrative Record

("AR") at 77, 85.  Plaintiff's claims were denied on initial review on December 12, 2022,

and again on reconsideration on September 9, 2023.  AR at 75–76, 103–104.  On June 10,

2024, a hearing was held by an Administrative Law Judge ("ALJ").  AR at 48–74.  The

ALJ issued an unfavorable decision on September 26, 2024.  AR at 30–42.  The Appeals

Council denied review on August 12, 2025, making the ALJ's denial the final decision of

the Commissioner.  AR at 1.  On September 23, 2025, Plaintiff filed suit in this Court.

*Doc. 1.*

II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the

Commissioner only to determine whether it (1) is supported by "substantial evidence"

and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Hum. Servs.*,

933 F.2d 799, 800–01 (10th Cir. 1991).  "In reviewing the ALJ's decision, [the Court]

neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks

omitted).

"Substantial evidence is more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Casias*, 933 F.2d at 800 (internal quotation marks omitted).  "The record must

demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to

discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must

discuss the uncontroverted evidence he chooses not to rely upon, as well as

2

significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### III.   ALJ EVALUATION

#### A. Legal Standard

For purposes of both CDB and SSI, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520.[1] If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is

---

[1] Plaintiff has applied for both CDB and SSI. The five-step test for determining disability is the same for both types of benefits, although the test is codified in two separate sections of the Code of Federal Regulations. 20 C.F.R § 404.1520 governs CDB; § 416.920 governs SSI.

expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, considering the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in

the national economy, considering the claimant's RFC, age, education, and work

experience. *Grogan*, 399 F.3d at 1261.

## B. **The ALJ's Decision**

On September 26, 2024, the ALJ issued a decision denying Plaintiff's application

for CDB and SSI. *See* AR at 30–42. As a preliminary matter, the ALJ determined that

Plaintiff had not attained age 22 as of April 1, 2020, the alleged onset date. AR at 33.

The ALJ then applied the five-step sequential analysis. At step one, the ALJ found

Plaintiff had not engaged in substantial gainful activity since April 1, 2020, the alleged

onset date. AR at 33.

At step two, the ALJ found Plaintiff had the following severe impairments:

depressive disorders, anxiety disorders, an eating disorder, and posttraumatic stress

disorder. *Id*.

At step three, the ALJ found that Plaintiff's severe impairments—both

individually and in combination—did not meet or equal the severity of an impairment

in the Listings. AR at 33–35. The ALJ determined that Plaintiff had a mild limitation in

understanding, remembering, or applying information, and moderate limitations in

interacting with others; concentrating, persisting, or maintaining pace; and adapting or

managing oneself, but these limitations did not satisfy the Paragraph B criteria for a

finding of disability under Listings 12.00. AR at 34–35.

At step four, the ALJ found Plaintiff had the RFC

> to perform a full range of work at all exertional levels, but with the following non-exertional limitations: the claimant is able to understand and remember both detailed and complex instructions; he is able to maintain attention and concentration to perform and persist at only simple tasks at a consistent pace for two hours at a time without requiring redirection to task; he requires work that does not involve interaction with the general public; he can have occasional interaction with co-workers and supervisors, but he cannot perform tandem tasks; he requires work involving no more than occasional change in a routine work setting and no more than occasional independent goal setting or planning; and he requires work that does not involve the use of public transportation or travel to unfamiliar places as part of the job.

AR at 35.  In making this finding she concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms.  AR at 36. However, Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.  *Id.*  She found generally persuasive the medical opinions of State agency psychological consultants Richard Sorensen, Ph.D., and Karen Ying, M.D. AR at 39.  She found the opinion of Abigail Banmbuh, PMHNP, not particularly persuasive.  AR at 40.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that he could perform jobs that exist in significant numbers in the national economy.  AR at 41.  Specifically, the ALJ found that Plaintiff could perform the requirements of three representative occupations: (1) dishwasher (DOT 318.687-

010); (2) hand packager (DOT 920.587-018); and (3) cleaner (DOT 323.687-010).  *Id*.

Accordingly, the ALJ concluded that Plaintiff was not disabled from April 1, 2020,

through the date of the decision.  AR at 42.

## IV.   PARTIES' POSITIONS

Plaintiff asserts that the ALJ erred by rejecting the medical opinion of treating

source NP Banmbuh without considering significantly probative, supporting evidence.

*Doc. 12*.  Defendant argues that the ALJ's decision should be affirmed because the ALJ

reasonably and correctly evaluated the medical opinions, and her findings were

supported by substantial evidence.  *Doc. 19*.

## V.   ANALYSIS

Plaintiff argues that the ALJ erred by rejecting NP Banmbuh's medical opinion

without considering: (1) the ten signs and symptoms NP Banmbuh identified to support

and explain her opinion; (2) the PHQ-9, GAD-7, and SRRS assessments showing

consistently severe depression and anxiety; and (3) the frequent medication changes

and increased therapy needed to address Plaintiff's symptoms.  *Doc. 12* at 21.

### A.   NP Banmbuh's Opinion

In determining a claimant's RFC, the ALJ must consider the combined effect of

all the claimant's medically determinable impairments.  *Wells v. Colvin*, 727 F.3d 1061,

1065 (10th Cir. 2013).  While the ALJ is not required to "discuss every piece of

evidence," the decision must include a discussion of "the 'uncontroverted evidence' the ALJ chooses not to rely upon and any 'significantly probative evidence' the ALJ decides to reject." *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (quoting *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007)).  To determine the weight given a medical source opinion, the ALJ must consider the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c).  The ALJ is only required to discuss the two "most important factors," supportability and consistency.  *Id*. § 404.1520c(b)(2).

In her Medical Source Statement dated November 30, 2024, NP Banmbuh opined that Plaintiff had a "Limited but satisfactory" ability to carry out many of the listed work-related tasks, and a "Seriously limited, but not precluded" ability to: complete a normal workday and workweek without interruptions from psychologically based symptoms; get along with co-workers or peers; deal with normal work stress; deal with the stress of semiskilled and skilled work; and use public transportation.  AR at 505–06. NP Banmbuh also indicated that Plaintiff's impairments or treatment would cause him to be absent from work about 4 days per month, and that Plaintiff had the ability to manage benefits in his own best interest.  AR at 507.

The ALJ found that the opinion was supported by NP Banmbuh's own

8

examination of the claimant, "which showed depression, anxiety, agoraphobia, decreased energy, problems concentrating, and panic attacks." AR at 40. However, the ALJ found it was "inconsistent with the medical evidence of record as a whole." *Id*. In particular, she found NP Banmbuh's opinion was not consistent with:

> medical records, mental status examinations, or the claimant's function report, which indicated normal perception, average intelligence, normal thought content, orientation times three, normal recent and remote memory, a normal mood, normal judgment, normal insight, average eye contact, cooperativeness, average intelligence, normal cognition, clear speech, logical thought processes, and no suicidal ideation, homicidal ideation, delusions, or hallucinations, as well as the ability to prepare his own meals, handle a savings account, clean the house, do the laundry, go to the grocery store, count change, vacuum, shop by computer, perform appliance repairs, watch videos, get along fine with authority figures, and spend time with others in person, by texting, and via online watch parties.

*Id*. (citing AR at 296–303, 381, 394–95, 465–66, 498–500, 516). Therefore, the ALJ found the opinion was not particularly persuasive. AR at 40.

### B.   <u>Signs and Symptoms</u>

Plaintiff argues that the ALJ improperly failed to consider the ten signs and symptoms identified by NP Banmbuh to support and explain her medical opinion. *Doc. 12* at 21. These ten identified "signs and symptoms" were as follows: (1) anhedonia or pervasive loss of interest in almost all activities, (2) appetite disturbance with weight change, (3) decreased energy, (4) thoughts of suicide, (5) blunt, flat or inappropriate affect, (6) feelings of guilt or worthlessness, (7) generalized persistent anxiety, (8) mood

disturbance, (9) difficulty thinking or concentrating, and (10) sleep disturbance.  AR at 504.

The ALJ was not required to list and discuss every symptom identified by NP Banmbuh.  *See Wall*, 561 F.3d at 1067.  The ALJ stated that she considered "the entire record" and "all symptoms" in determining Plaintiff's RFC, AR at 35, which the court must credit in the absence of contrary evidence.  *See Wall*, 561 F.3d at 1070 ("Where . . . the ALJ indicates he has considered all the evidence our practice is to take the ALJ 'at [her] word.'").  Nevertheless, the ALJ specifically discussed almost all of the identified symptoms throughout her RFC assessment.  *See, e.g.*, AR at 37 (discussing Plaintiff's inability to eat, feeling "sluggish," inability to focus, and flat affect); AR at 38 (discussing Plaintiff's increasing anxiety, major depressive disorder, and passive suicidal ideation); AR at 39 (discussing Plaintiff's difficulty sleeping and concentrating).  In addition, although the ALJ did not explicitly reference NP Banmbuh's checklist of "signs and symptoms," she carefully considered and discussed NP Banmbuh's opinion of the work-related limitations resulting from said symptoms.  *See* AR at 40.  In short, the ALJ's consideration and discussion of the ten signs and symptoms were clearly adequate under the applicable regulations.

Plaintiff additionally argues that the ALJ's summary of the medical evidence she found inconsistent with NP Banmbuh's opinion overlooked:

significant examination findings, including a depressed or anxious mood, flat affect, and consistent suicidal thoughts. And the summary of [Plaintiff's] function report ignored that [Plaintiff] struggled to get out of bed, spent most of his time isolated, was unable to maintain regular sleep, that he struggled to eat, that he was unable to drive, and that his only friends were on the internet and not in person. The ALJ also ignored that due to agoraphobia, [Plaintiff] only left his house twice a month for doctor or therapy appointments and, less frequently, to go with his mother to a store.

*Doc. 12* at 21–22 (citations omitted). Once again, the ALJ's decision specifically discussed most of these symptoms and findings. *See*, *e.g.*, AR at 37 (problems eating and sleeping, flat affect, trouble leaving the house, inability to drive); AR at 38 (depression, anxiety, suicidal thoughts). Therefore, it cannot reasonably be said that the ALJ failed to consider the cited evidence, or that her analysis with respect to the consistency of NP Banmbuh's opinion was insufficient.

Although a different factfinder might have reached a different conclusion about Plaintiff's limitations, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084. The undersigned finds that the ALJ's analysis of Plaintiff's symptoms comported with the applicable legal standards and was supported by substantial evidence. *See Casias*, 933 F.2d at 800–01. Accordingly, the undersigned finds no reversible error on this point.

11

### C.    PHQ-9, GAD-7, and SSRS Assessments

Plaintiff argues that the ALJ erred by failing to consider the PHQ-9, GAD-7,[2] and SSRS[3] assessments, which "showed consistently severe depression and anxiety and a moderate-to-high risk." *Doc. 12* at 21.  The record shows that Plaintiff was administered these tests on multiple occasions and was at various times assessed with severe depression, severe anxiety, and high suicide risk.  *See*, *e.g.*, AR at 403, 604, 864, 920–22, 932–33, 978–79.  However, the ALJ's decision does not reference the assessments or Plaintiff's scores.

Plaintiff argues that the ALJ's failure to discuss these scores was reversible error, citing *Farden v. Berryhill*, Civ. No. 17-704 LF, 2019 U.S. Dist. LEXIS 9316, at *19 (D.N.M. Jan. 17, 2019), where the court reversed the Agency's decision due to the ALJ's "complete failure to consider" the PHQ-9 and other testing administered by the consultative psychiatrist.  In *Farden*, although the claimant's PHQ-9 scores indicated severe depression, the ALJ rejected the consultative psychiatrist's medical opinion on the faulty premise that it was "based . . . *exclusively* on the claimant's statements."  *Id*. at

---

[2] The PHQ-9 ("Patient Health Questionnaire") and GAD-7 ("Generalized Anxiety Disorder Questionnaire") are screening instruments used to identify depression and anxiety, respectively.  *See* https://aims.uw.edu/resource-library/phq-9-depression-scale (last visited May 11, 2026); https://aims.uw.edu/resource/generalized-anxiety-disorder-subscale-gad-7/ (last visited May 11, 2026).

[3] Plaintiff's brief refers to the "SRRS," or the "Columbia Social Readjustment Rating Scale."  *Doc. 12* at 7, 20–21.  However, the questionnaire actually used in the cited portions of the record is the "Columbia SSRS," or Columbia-Suicide Severity Rating Scale, which is designed to measure patient suicidality.  *See* https://www.med.upenn.edu/cbti/assets/user-content/documents/Columbia-Suicide%20Severity%20Rating%20Scales%20(C-SSRS).pdf (last visited May 11, 2026).

*14, 15–16 (emphasis added).  The court held that the ALJ improperly failed to consider

the "objective evidence"[4] from the consultative psychologist's examinations, including

the PHQ-9 scores.  *Id*. at *17.  The case was therefore remanded.  *Id*. at *20.

The facts of *Farden* differ significantly from the facts presented here.  The ALJ did

not find that NP Banmbuh's opinion was based exclusively on Plaintiff's subjective

complaints.  AR at 40; *c.f. Farden*, 2019 U.S. Dist. LEXIS 9316, at *15–16.  On the contrary,

the ALJ found that NP Banmbuh's opinion was "supported by her own examination of

the claimant."  AR at 40.  The reason the ALJ assigned less weight to NP Bambuh's

opinion was that it was "not consistent with medical records, mental status

examinations, or the claimant's function report."  *Id*.  Unlike in *Farden*, the ALJ's

statements do not indicate that she failed to consider Plaintiff's test results, and the

written decision provides specific reasons for rejecting NP Banmbuh's opinion on other

grounds.  *See Jones v. Berryhill*, Civ. No. 18-495 KBM, 2019 U.S. Dist. LEXIS 90463, at *16

---

[4] Plaintiff and Defendant disagree about whether these assessments constitute "objective medical evidence" or merely reflect Plaintiff's subjective complaints.  *See doc. 12* at 1; *doc. 19* at 10–11.  Courts within this circuit, and across the country, have reached different conclusions on this question.  *Compare Jones v. Berryhill*, Civ. No. 18-495 KBM, 2019 U.S. Dist. LEXIS 90463, at * 17 (D.N.M. May 29, 2019) ("The Court declines to go as far as . . . finding that the PHQ-9 is a 'self-serving questionnaire,' where it is has been found to be 'one of the most validated tools in mental health[.]'" (citations omitted)) *and Salina S. v. Kijakazi*, 2022 U.S. Dist. LEXIS 154350, at *22 (D. Idaho Aug. 25, 2022) ("[C]linical interviews and mental status evaluations, while always based on self-reports, are nevertheless 'objective measures' that ALJs may not routinely disregard.") *with Laquita M.R. v. Bisignano*, 2025 U.S. Dist. LEXIS 184200, at *24 (M.D.N.C. Sept. 19, 2025) ("Plaintiff mischaracterizes her scores on the PHQ-9 and the GAD-7 as 'objective findings.'") *and Jackson v. Kijakazi*, 2021 U.S. Dist. LEXIS 249865, at *9 (W.D. Okla. Nov. 23, 2021) ("The PHQ-9 is . . . a report of Plaintiff's subjective symptoms.").  The undersigned assumes without deciding, for purposes of this recommendation, that the assessments are "objective evidence" within the meaning of the regulations.

(D.N.M. May 29, 2019) (finding no error where the ALJ failed to mention psychological testing because she, "unlike the ALJ in *Farden*, provided specific, legitimate reasons for rejecting" the psychologist's opinion) (quotation and citation omitted).

The undersigned finds that the ALJ's consideration of the evidence was adequate. The ALJ was not required specifically to discuss Plaintiff's PHQ-9, GAD-7, and SSRS scores. "While the 'record must demonstrate the ALJ *considered* all of the evidence,' there is no requirement an ALJ '*discuss* every piece of evidence.'" *Watts v. Berryhill*, 705 F. App'x 759, 762 (10th Cir. 2017) (quoting *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014)) (emphases added)). The ALJ was required only to discuss the "uncontroverted evidence" she chose not to rely upon and the "significantly probative evidence" she decided to reject. *Wall*, 561 F.3d at 1067 (quoting *Frantz*, 509 F.3d at 1303). To the extent the PHQ-9 and GAD-7 showed severe depression and anxiety, it does not appear that the ALJ rejected the evidence, as she found that Plaintiff's depressive disorders and anxiety disorders were severe impairments. AR at 33. The ALJ also discussed Plaintiff's suicidal ideation. AR at 38. Plaintiff does not explain how or why his PHQ-9, GAD-7, and SSRS scores necessitated the addition of any specific functional limitations to the RFC. *See Watts*, 705 F. App'x at 761 ("Mrs. Watts does not identify any specific functional limitation these treating physicians identified that the ALJ overlooked in making his RFC determination."); *Orso v. Colvin*, 658 F. App'x 418, 420

14

(10th Cir. 2016) ("[The claimant] fails to explain specifically what additional limitations were needed based on his anxiety or any other impairment.").  Therefore, Plaintiff has not shown that the ALJ rejected any "significantly probative evidence" without proper discussion, *see Wall*, 561 F.3d at 1067, and the undersigned finds no error in the ALJ's consideration of the medical evidence.

### D.  Medication Changes and Increased Therapy

Finally, Plaintiff argues that the ALJ erred by rejecting NP Banmbuh's opinion without considering Plaintiff's "consistent need for medication increases or changes and increased therapy."  *Doc. 12* at 22.

The record shows that the ALJ specifically discussed several changes and increases to Plaintiff's medication.  *See* AR at 38 ("The claimant was also started on Buspar for his anxiety and advised to continue taking Prozac."); *id*. ("The claimant's Wellbutrin for his depression was increased, and he was advised to continue taking Buspar."); *id*. ("The claimant's Gabapentin was increased; he was also advised to continue taking his Wellbutrin.").  With respect to the asserted need for increased therapy, Plaintiff does not explain when the increase occurred or identify which portions of the record support his argument.  *See doc. 12* at 18–23.  The administrative record shows that Plaintiff attended regular therapy sessions from 2021 through the date of the hearing in 2024.  *See* AR at 512–979.  While it does appear that these sessions

may have become more frequent over time, the ALJ discussed findings from visits spanning the entire period, up to and including a visit in February 2024. *See* AR at 37– 39. Consequently, there is no reason to believe that the ALJ did not consider the increased frequency of Plaintiff's therapy sessions. In addition, Plaintiff does not explain how the increase in either medication or therapy undermined the ALJ's analysis of NP Banmbuh's opinion or necessitated additional functional limitations in the RFC. *See Watts*, 705 F. App'x at 761; *Orso*, 658 F. App'x at 420. The undersigned therefore finds no reversible error.

## VI. CONCLUSION

For the foregoing reasons, I recommend DENYING Plaintiff's Motion to Reverse and Remand (*doc. 12*) and AFFIRMING the Commissioner's decision.

**IT IS SO ORDERED.**

_____

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

16